Dooley et al., Appellants, *v.* Charleroi Borough.

Argued October 4, 1937. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*H. Russell Stahlman,* with him *A. L. W. Sismondo,* for appellants.

*R. E. Burnside,* of *Burnside, Moninger & Burnside, D. M. McCloskey* and *Roy I. Carson,* for appellee, were not heard.

Opinion by Mr. Justice Maxey, November 12, 1937:

William L. Dooley, later joined by his trustee in bankruptcy, brought an action in trespass against the Borough of Charleroi to recover damages both for personal injuries and injuries to his truck. The alleged cause of action arose on November 3, 1931, when Dooley's truck at about 2:30 p. m. that day ran over a steep declivity on the southern side of Maple Avenue in the aforementioned borough.

At the close of plaintiff's case the court granted a nonsuit on the ground that "it appears the accident was caused by the failure of certain parts of the truck to operate properly, the plaintiff testifying that otherwise he could have backed and turned his truck. Such being the case, it does not appear by plaintiff's evidence that the failure to erect a guard rail or other protection on the lower side of the highway, or any negligence on the part of the borough, was the proximate cause of the accident."

Maple Avenue is a narrow, "dead-end" street. On its north side are a few houses and on its south side is a steep declivity. The latter is not guarded by any rail. The traveling portion of the street is so narrow that persons have difficulty in turning motor vehicles. A turn can be made only where widening had taken place on private property on the north side of the street. At the point of the accident an owner of property had begun an excavation for a garage but had abandoned the construction. This left a graded area next to the street. The area sloped upward but it was available for the use of persons parking cars or turning them. There was also another place along the street which was used for turning cars. It appears from the evidence that plaintiff had been granted a driver's license only three months prior to the accident and that heretofore he had never attempted to turn his truck at this place but had his experienced employee do it. On the day of the accident plaintiff's driver had tarried to talk with a customer on Maple Avenue, and Dooley attempted to turn the truck around at the excavation above described. At this point the traveled portion of the road was 11 feet wide and the excavation was 25 feet wide. From the edge of the traveled portion of the road was an increasing downward slope ending four or five feet from the traveled way in an abrupt embankment or declivity down a very steep slope for a distance of about 200 feet to a state highway.

Dooley drove his truck, which weighed with its load about 3,500 pounds, past the excavation, then backed in a quarter circle to his left into the excavation as far as he could go. This left the truck facing the edge of the bank, the ground sloping from the rear of the truck to the roadway. Plaintiff permitted the truck to drift almost directly across the road to within three feet from the edge of the bank. He then stopped the truck and set his emergency brake. He then tried to back in another quarter circle for the purpose of completing his turn. His clutch failed to take hold promptly, a thing which

it had previously failed to do and of which he had knowledge. Therefore, when he released his brake, by reason of the failure of the engine to take hold, the truck, instead of going backward, drifted forward one and a half feet further toward the bank. Plaintiff again attempted to back his truck. The engine and clutch again failed in their functions and the truck with Dooley inside was precipitated over the steep declivity, resulting in injuries to the plaintiff and damage to his truck.

The court below in its opinion refusing to take off the nonsuit aptly said: "Plaintiff knew the location and situation well; . . . He knew the slope between the traveled portion and the declivity; he knew that if he again released his emergency brake and moved forward the same distance, his wheels must drop over the abrupt embankment and he would be helpless. According to his own testimony, he also knew that his clutch or some part of his truck 'didn't take hold immediately.' He had noticed this at different times, and by reason of this he was taking special care with the emergency brake. In this position and with this knowledge, plaintiff again released his emergency brake and undertook to back his truck from this obviously dangerous position." When plaintiff was asked why after the truck stopped within a foot and a half of the edge of the bank, he didn't wait until somebody came and helped him steady it, without taking a chance of trying it over again, he answered: "I had confidence enough in my driving to think I could get back." As the court below pointed out in his opinion: "All of this time plaintiff's driver was from 50 to 75 feet away . . . and was subject to his call for assistance." The court below also said: "The plaintiff cannot test dangers, but must himself take precautions even though that requires affirmative action by him," and cited *Conrad v. Augusta Township*, 200 Pa. 337, 49 A. 770, where a teamster's lantern went out and instead of stopping his team to light the lantern he continued some distance, approaching a dangerous embankment

of which he knew, and where it was held that it was his duty to take the precaution of lighting the lantern and keeping a lookout for the embankment. In that case recovery was denied. See also *Mueller v. Ross Township,* 152 Pa. 399, 25 A. 604.

In *Kline et al. v. Moyer and Albert,* 325 Pa. 357, 191 A. 43, this court, in an opinion by Mr. Justice STERN, expressed a principle which may be applied to the case at bar, as follows: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." Applying this principle to the instant case, even if defendant did negligently permit the existence of an unguarded place of danger, the accident in question would not have taken place except for the negligence of the driver of the truck and therefore the condition which the borough permitted to exist was not the proximate cause of the accident but merely a circumstance which, when coupled with the negligence of Dooley, caused the accident giving rise to this suit.

Plaintiff relies strongly on the case of *Winegardner v. Springfield Twp.,* 258 Pa. 496, 102 A. 134. However, the facts of that case clearly distinguish it from the case at bar. That was a case in which plaintiff's decedent was ascending a hill on a public highway. The road where the accident occurred was from eight and one-half to nine and one-half feet wide with a gradual slope towards the embankment over which the deceased and the team fell. It was raining and sleeting on that morning, and at the place of the accident considerable sleet had fallen on the road. The embankment was about five or six feet in height and was not protected by guard rails or otherwise. At the foot of the hill and about a quarter of a mile from the place of the accident,

the deceased attached the lines to the rubber lever on the right side of the wagon, and he and another man alighted and permitted the team to ascend the grade while they walked behind the wagon. The team proceeded up the hill until the accident occurred. When the team reached a certain point on the hill, the wagon began to slide toward the embankment. The deceased, who was still walking in the rear of the wagon, immediately "grabbed the hind corner of the bed" to prevent the wagon from going over the embankment. He was unsuccessful and fell with the wagon and team and was killed. In its opinion in that case this court pointed out that that accident was not caused "by the mules refusing to proceed along the highway, *nor by backing the wagon over the embankment* [italics supplied]. The deceased, therefore, was using the highway for the purpose of ordinary travel, and with a team that could be used with safety on a road that was properly protected." The court said further that "the team was, at the time the wagon began to slide, in the bed of the road, and just where it would have been had a safe driver been directing it from his seat on the wagon." The fact that the wagon was at an ordinary, safe place in the road when it began to slide, distinguishes it from the case at bar. In the instant case, Dooley had by his own act placed the front end of his truck within a foot and a half of obvious peril. It took an affirmative act on his part to bring about the disastrous result which he might have easily anticipated. In the *Winegardner* case the victim had no reason to anticipate what actually did take place would take place. In that case the fatal consequences were not reasonably foreseeable; in the instant case the consequences were clearly foreseeable. If, in the *Winegardner* case the driver of the wagon had backed it within a foot and a half of a declivity and then by an imprudent act on his part, had caused the mules to so move as to back the wagon over the precipice, he could justly have negligence imputed to him. However, such are not the

facts of that case. This court also held in that case that it was not negligence for the deceased to walk behind his wagon, the court saying: "Observation teaches that very frequently drivers of teams, ascending the hills and mountains of the State and carrying heavy loads leave their seats on the wagons for the purpose of lightening the burden, walk in the rear of the wagons, and from that place direct the movements of the teams."

The degree of the foreseeability of the injurious consequences which will result from a certain contemplated act, is the measure of the obviousness of the duty of the actor to avoid it. Under the admitted circumstances of this case, the consequences of plaintiff's act in attempting, with his limited experience and ill-conditioned "engine and clutch," to turn his truck around when it was 18 inches from the declivity, was obvious to the degree of inevitability.

The judgment is affirmed.