**Farkas v. Hustead**

*William Pineo, Gordon R. Miller,* for plaintiffs.

*John W. Beatty, Michael Dunlavey,* for defendant Hustead.

*Eugene G. Berry,* for additional defendant Commonwealth of Pa.

*Peter E. Blystone,* for additional defendant Sadsbury Township.

*Thomas Lent,* for additional defendant Bruce & Merrilees Electric Company.

THOMAS, *P.J.,* April 4, 1985—This action is before the court on additional defendant Sadsbury Township's (Sadsbury) motion for summary judgment. Sadsbury was joined by the original defendant, William D. Hustead (Hustead), in an action in trespass which arose out of a two-car collision on May 11, 1982, at the intersection of U.S. Route 322 and Pennsylvania Route 18 in Sadsbury Township, Crawford County, Pa. The collision, which resulted in the death of Michael Andrew Farkas (Farkas), occurred when Hustead's car, traveling west on U.S. 322, collided with Farkas' car as it entered the subject intersection from Route 18.

In Hustead's complaint against Sadsbury, he alleges that Sadsbury was negligent in failing to properly design and maintain the traffic signal at the in-

tersection and was negligent in failing to take corrective action after being notified, or placed on constructive notice, that the newly installed traffic signal was not functioning properly. Sadsbury has moved for summary judgment on the grounds that it had no control or supervision over either the traffic signal or the intersection on the date of the accident. Sadsbury further asserts that its lack of control entitles it to governmental immunity under 42 Pa. C.S. §8541. Additional defendant Commonwealth of Pennsylvania, Department of Transportation (Commonwealth), argues that Sadsbury's involvement with traffic signals at the subject intersection, starting in 1964, creates issues of fact as to whether Sadsbury had assumed a duty of care to the traveling public passing through the intersection and whether Sadsbury breached that duty.

Plaintiffs oppose summary judgment and point out that Sadsbury had access to the traffic signal controls at the time of the accident and that, at the Commonwealth's request, township officials put the signal into a flashing mode because the signal was malfunctioning. Plaintiffs argue this action by the township officials shows that Sadsbury could exercise control over the signal and that an issue of fact exists as to whether Sadsbury breached a common law duty to the traveling public by not exercising its control in some manner when it knew the intersection was not safe. Plaintiffs argue further that Sadsbury would be liable for approving a signal design that was faulty because it did not allow enough time for traffic from Pennsylvania Route 18 to safely enter the intersection of Route 18 and 322.

## FACTUAL BACKGROUND

On July 6, 1964, the Board of Supervisors of Sadsbury Township made application for a permit to

install and operate the traffic signal at U.S. 322 and Pennsylvania Route 18. The permit was accordingly issued to Sadsbury Township on December 10, 1964. Permittee Sadsbury agreed to maintain the traffic signal in a safe condition at all times. In 1980, Sadsbury requested the Commonwealth to undertake appropriate measures to replace the 1964 signal. On April 26, 1981, Sadsbury reached an agreement with the Commonwealth under which the Commonwealth would install a new traffic signal and that, upon installation, Sadsbury would maintain the signal in accordance with the signal permit to be issued to Sadsbury by the Commonwealth. On June 9, 1981, the permit to operate this new traffic signal was issued to Sadsbury.

On August 12, 1981, pursuant to the agreement of April 26, 1981, the Commonwealth contracted with Bruce and Merrilees Electric Company (Bruce and Merrilees) to install the new signal with the condition that Bruce and Merrilees be responsible for correcting any signal failures for a period of 30 days after the signal became operable. Bruce and Merrilees began installation work on September 23, 1981, and on February 26, 1982, turned the new signal on for the first of three unsuccessful 30 day test periods. (See Kisseleff Deposition, Page 3, 4, 5). On June 4, 1982, a successful 30 day test period was completed and the Commonwealth issued a certificate of acceptance to Bruce-Merrilees on June 8, 1982. However, the accident, which is the subject of this litigation, occurred on May 11, 1982, during the final and successful 30 day test period.

## DISCUSSION

The first question to be resolved is whether Sadsbury is subject to suit under the exception to

governmental immunity found in 42 Pa. C.S. §8542(b)(4) which reads:

"(b) Acts which impose liability — The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . . .

"(4) Trees, traffic controls and street lighting. — A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. . . . ."

## THE NOTICE ISSUE UNDER (b)(4)

In the instant case, the record shows that township officials were aware of problems with the new traffic signal that prevented the 30 day test period from being completed on three different occasions and the officials had received anonymous phone calls concerning problems with the signal and could reasonably be charged with notice of a potentially dangerous situation.

## THE CONTROL ISSUE UNDER (b)(4)

The more crucial question regarding Sadsbury's immunity claim is whether Sadsbury had control of the traffic signal or the intersection. Sadsbury ar-

gues that, as a matter of contract, the township had no control over the means and methods by which the traffic signal was installed. (See Commonwealth and Bruce and Merrilees' Contract Documents). We agree with Sadsbury that, under the agreement of April 26, 1981, Sadsbury had no duties or responsibilities regarding the traffic signal until it was installed and accepted by the Commonwealth. We reject the Commonwealth's contention that Sadsbury owed any duties under either the 1964 permit or the 1981 permit at the time of the May 11, 1982 accident. Sadsbury's obligations under the 1964 permit were extinguished when the old signal was turned off and Sadsbury's obligations under the 1981 permit had not yet been triggered by the Commonwealth's 'final acceptance' of Bruce and Merrilees' performance. (Petulla Deposition, page 21 and Gurley Deposition, Exhibits 2 and 4).

However, we do not agree with Sadsbury that it can entirely contract away the general control and police power of the township and we note that township officials did act to put the signal in its flashing mode on one occasion.

"It is the duty of a township to exercise reasonable care to keep its highways in a safe condition for ordinary travel. It must anticipate and provide against danger to persons using its roads for travel conducted in the ordinary manner. It must remove obstructions and defects which would naturally or probably cause injury to those persons who might have occasion to travel upon its highways." Winegardner v. Springfield Township, 258 Pa. 496, 500, 102 A.134 (1917).

We accordingly find Sadsbury Township under the facts produced so far to be outside the cloak of governmental immunity provided in 42 Pa. C.S.§8541.

## ARE THERE TRIABLE ISSUES OF MATERIAL FACT WITH RESPECT TO SADSBURY TOWN-SHIP?

One undisputed fact in this case is that Sadsbury did review and approve certain drawings and plans for the design of the new traffic signal. We note here that it was the Commonwealth that controlled the design of the signal (Pankratz Deposition, page 74, 75) and even hired an independent consultant to help prepare the plans. (Petulla Deposition, page 67). However, we find that a factual issue arises at this stage as to the impact of Sadsbury's role in approving a design of a traffic signal that it knew, or should have known, was defective or dangerous and this issue is for a jury's determination. Additionally, the issue of fact concerning the actual or constructive notice Sadsbury officials had of a potentially dangerous situation is also for the jury's determination together with the question of whether proper actions were taken to protect the traveling public.