CHIEF JUSTICE SAYLOR, Concurring
I join the majority opinion. I acknowledge that I supported the per curiam Order in Baer v. PennDOT , 564 Pa. 603, 770 A.2d 287 (2001), which applied the decision in Dean v. PennDOT , 561 Pa. 503, 751 A.2d 1130 (2000), in circumstances involving alleged negligence in the design, construction, and maintenance of guardrails. The majority has persuaded me, nonetheless, that the outcome of Baer is undermined by a conventional fixtures analysis.
I wish to also touch briefly on the substantive liability standard involved. In this regard, I observe that the decision in Snyder v. Harmon , 522 Pa. 424, 562 A.2d 307 (1989), cited by the majority, omitted reference to a reasonableness factor in discussing PennDOT's liability relative to an allegedly defective condition associated with real estate under the Commonwealth's control. See id. at 435, 562 A.2d at 312 ("The corresponding duty of care a Commonwealth agency owes to those using its real estate, is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." (emphasis added) ).
In Pennsylvania, however, the notion of safety in the abstract was associated with jury instructions in the strict liability arena, whereas the litmus in the negligence arena is reasonable care and safety. Compare Tincher v. Omega Flex Inc., 628 Pa. 296, 363, 104 A.3d 328, 368 (2014) (noting that, with respect to strict product liability claims, the question presented to a jury was whether the product lacks any element necessary to make it safe for its intended use) (emphasis added), with Adams v. J.C. Penney Co. , 411 Pa. 653, 656-57, 192 A.2d 218, 219 (1963) (indicating *469 that property owners have a duty to invitees to maintain the premises in a reasonably safe condition for its contemplated use) (emphasis added) ).[1] The reasonableness dynamic accounts for cost-benefit considerations which, here, are quite salient to the Commonwealth given the scale of its responsibilities relative to a vast collection of public roads and highways.
I note that Snyder , like the present case, concerned sovereign immunity and was not closely focused on the underlying substantive liability standards. Moreover, Snyder 's depiction of the safety standard untethered by reasonableness is inconsistent with a wide range of decisional law. See, e.g. , McKenzie v. Cost Bros., Inc. , 487 Pa. 303, 309, 409 A.2d 362, 365 (1979) (reiterating the general rule that a possessor of land has a duty to use reasonable care to make the premises reasonably safe for invitees); Miller v. Hickey , 368 Pa. 317, 324, 81 A.2d 910, 914 (1951) (noting that a landowner is not charged with the absolute duty of keeping his premises in a safe condition, but rather, is responsible for correcting known defects and ensuring that the property is reasonably safe for invitees); accord RESTATEMENT (SECOND) OF TORTS S, § 343(c)(i) (1965), Comment d.
While the distinction between "safety" and "reasonable safety" may seem to be modest in a colloquial sense, it is quite significant as a matter of substantive law. Indeed, the difference heralded a period of great uncertainty in Pennsylvania in the product liability context. See Tincher , 628 Pa. at 375-84, 104 A.3d at 376-81. It is important, as well, to recognize that guardrails themselves may pose inherent risks to the traveling public in some circumstances. See, e.g., Estate of Gage v. State , 178 Vt. 212, 882 A.2d 1157, 1160 (2005). Accordingly, other jurisdictions have held that the government's duty is to construct and maintain its highways and shoulders-including guardrails-in a reasonably safe manner, again, balancing a range of relevant factors. See Helton v. Knox County , 922 S.W.2d 877, 883 (Tenn. 1996) (holding that, while the standard of care imposed on governments in building and maintaining roads and bridges is one of reasonableness, it is not its duty to maintain guardrails of sufficient strength to prevent all accidents); see also Louisville Gas and Elec. Co. v. Roberson , 212 S.W.3d 107, 109 (Ky. 2006).[2]
Finally, there remains a concern with cost-benefit decisions of government being decided, or second guessed, in jury rooms. In this regard, I note that a number of other jurisdictions apply a discretionary-functions overlay to highway system design and/or maintenance, extending immunity to discretionary decision-making endeavors. See, e.g. , *470 Kirby v. Macon County , 892 S.W.2d 403, 407-409 (Tenn. 1994) ; Keegan v. State , 896 P.2d 618, 623-25 (Utah 1995) ; Hennes v. Patterson , 443 N.W.2d 198, 202 (Minn. 1989) ; City of Jackson v. Brown , 729 So.2d 1231, 1235 (Miss. 1998) ; Patrazza v. Commonwealth , 398 Mass. 464,497 N.E.2d 271, 273 (1986). The Pennsylvania General Assembly, however, has not specifically insulated discretionary functions as such from the effect of the immunity exceptions, leaving this Court to implement the series of discretely-defined exceptions on their prescribed terms (subject to the strict construction overlay).[3] Accordingly, while I have some reservations about the policy implications of this case, I agree with the majority that the result is appropriately tethered to the terms of the immunity statute.
JUSTICE WECHT
Like the learned Majority, I believe that the plain language of the real estate exception, Subsection 8522(b)(4) of the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521 -28 ("the Act"), waives Commonwealth immunity for damages caused by dangerous guardrails affixed to Commonwealth real estate.[1] I agree as well that Dean v. Commonwealth, Department of Transportation , 561 Pa. 503, 751 A.2d 1130 (2000), does not control the outcome of this case, as Dean was predicated upon the absence of a guardrail, rather than the presence of a defective one. I write separately to suggest that this Court should overrule Dean . Not only does Dean conflict with the plain meaning of the real estate exception, it also creates a perverse incentive for the Commonwealth to forego the installation of guardrails entirely, confident that it cannot be held liable for any harm that ensues, rather than install guardrails at considerable cost and expose itself to liability if those guardrails prove uncrashworthy.
To understand Dean , we first must examine the case upon which it relied. In Snyder v. Harmon , 522 Pa. 424, 562 A.2d 307 (1989), plaintiffs climbed a seven-foot high embankment adjacent to the highway in an effort to flee a rogue vehicle. Unwittingly, they fell into a privately-owned strip mine on the far side. In the plaintiffs' suit against the Commonwealth, the Commonwealth moved for summary judgment, invoking sovereign immunity under the Act. The trial court granted the Commonwealth's motion, finding that the plaintiffs had failed to plead sufficient facts showing that the Commonwealth realty-rather than the privately-owned mine-was dangerous. On appeal, the Commonwealth Court reversed, ruling that the absence of safety features on the Commonwealth realty protecting against the mine's hazards created a genuine issue of material fact as to the dangerousness of the Commonwealth realty sufficient to waive sovereign immunity.
This Court reversed, holding the Commonwealth immune. This Court acknowledged that the Commonwealth has a duty under Section 8522 to ensure "that the condition of [its] property is safe for the activities for which it is regularly used, *471 intended to be used or reasonably foreseen to be used." Snyder , 562 A.2d at 312. However, this Court observed that, in order to satisfy the real estate exception, the "dangerous condition [at issue] must derive, originate from or have as its source the Commonwealth realty." Id. at 311. This Court barred the plaintiffs' claim, because the danger of which they complained (i.e. , the privately-owned mine) did not derive from Commonwealth realty. Unlike the Commonwealth Court, this Court held that the absence of safeguards on Commonwealth realty to protect against the mine did not render the Commonwealth's realty dangerous for purposes of the real estate exception. In the Snyder Court's view, the absence of the specific safeguards that the plaintiffs alleged should have been installed could not constitute defects of the land itself. Id. at 312-13 ("[T]he absence of lighting so as to create a deceptive appearance of the shoulder of the road cannot be said to be either an artificial condition or a defect of the land itself.").
Eleven years later, in Dean , two plaintiffs were injured after their vehicle "fishtailed on the snow-covered roadway ... [,] left the graveled portion of the highway and traveled over a steep, declining embankment where it overturned." Dean , 751 A.2d at 1131. The plaintiffs alleged that PennDOT was negligent in failing to install a guardrail to protect against the dangerous embankment. Relying upon Snyder 's "absence of lighting" language, this Court held the Commonwealth immune, ruling that "the Commonwealth's failure to erect a guardrail on the highway is not encompassed by the real estate exception... [because] the absence of a guardrail cannot be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury." Id. at 1134. "[K]eeping in mind that the exceptions to sovereign immunity are to be narrowly construed," and ignoring the fact that the embankment that caused the injury was on Commonwealth realty, the Dean Majority reasoned that the Commonwealth waives immunity only when the highway itself is rendered "unsafe for the purposes for which it was intended, i.e. , travel on the roadway." Id. Thus, although the Dean Majority acknowledged that whether a dangerous condition exists is a question of fact for the jury, it held nonetheless that "the allegations in the instant case do not pass the initial threshold necessary under the immunity provisions to raise a question of fact regarding whether a dangerous condition existed." Id. at 1135 n.10.
In a concise dissent, Justice Nigro pointed out the obvious inconsistency in the Dean Majority's logic: "If, as the majority contends, the absence of a guardrail does not affect the safety of the road for travel, I question why the Commonwealth would ever place a guardrail on a highway in the first place." Id. at 1135 (Nigro, J., dissenting). In a separate dissent, Justice Newman argued that the Commonwealth waived immunity when "the condition of government property created a reasonably foreseeable risk of harm that actually happened." Id. (Newman, J., dissenting). In Justice Newman's view, because the injury was foreseeable, and was caused by a dangerous condition of Commonwealth real estate (i.e. , the declining embankment, the absence of a safeguard, or a combination of the two), the Commonwealth had a duty to install reasonable safety features to protect against that danger. Because the Commonwealth failed to do so, the Commonwealth realty as a whole (including the highway and the surrounding embankment) was rendered dangerous, and the Commonwealth waived immunity, pursuant to the real estate exception.
The holding and reasoning of the Dean Majority contradict the plain meaning of the real estate exception, and Dean should *472 be overruled. Dean ' s stark dichotomy between the presence and absence of a guardrail confounds Section 8522's explicit waiver of immunity "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute." 42 Pa.C.S. § 8522(a). It has long been axiomatic at common law that a possessor of land is subject to liability for harm caused to invitees[2] by a condition on her land if she knows, or has reason to know, of a latent, unreasonable risk of harm that she should expect the guest not to discover or recognize, and if she fails to render that condition reasonably safe. Atkins v. Urban Redevelopment Auth. of Pittsburgh , 489 Pa. 344, 414 A.2d 100, 103 (1980) (adopting the Restatement (Second) of Torts § 343 ).[3] This is particularly so for possessors of land adjacent to a highway. See RESTATEMENT (SECOND) OF TORTS § 368 (1965).[4]
Under the real estate exception, the Commonwealth waives immunity for "a dangerous condition of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4). Neither the Act, nor any reasonable construction of its real estate exception, predicates the waiver of immunity upon whether a dangerous condition is the result of the absence of a safety feature or the presence of a defective one.[5] Nor does the statute concern itself at all with the question of whether the alleged danger complained of impedes travel on the roadway itself, or looms on the adjacent berm. Although "one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." Felix Frankfurter, Some Reflections on the Reading of Statutes , 47 COLUM. L.REV. 527, 536 (1947). Importantly, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." Commonwealth v. Johnson , 611 Pa. 381, 26 A.3d 1078, 1090 (2011) (quoting Commonwealth v. Rieck Inv. Corp. , 419 Pa. 52, 213 A.2d 277, 282 (1965) ).
*473 In point of fact, the Majority's holding necessarily leaves little, if any, of Dean 's reasoning intact.[6] Dean 's ruling that the Commonwealth waives immunity only when the highway is "unsafe for the purposes for which it was intended, i.e. , travel on the roadway," Dean , 751 A.2d at 1134, is patently irreconcilable with the Majority's salutary conclusion that "the real estate exception to sovereign immunity ... applies to dangerous conditions of all Commonwealth real estate, not just dangerous conditions of highways." Maj. Op. at 464.[7]
Nevertheless, because the Majority chooses not to overrule Dean , an anomaly arises. To preserve Dean , and to apply it in tandem with the Majority's holding, creates a perverse incentive for the Commonwealth to forego the installation of guardrails entirely, lest it waive immunity when those guardrails cause injury. Under the Majority's holding, the Commonwealth waives immunity for defective guardrails. Yet, under Dean , the Commonwealth is immune if it never installs those guardrails in the first place. Thus, although the Commonwealth may have a statutory[8] and *474 common-law duty to make its highways reasonably safe for the purposes for which they are used, Dean tacitly insists that the Commonwealth need not install guardrails at all, even when they are obviously necessary to highway safety. I fear that this Court unwittingly has subordinated the Commonwealth's duty to protect its citizens to Dean 's implicit concern for protecting the public fisc.[9] We must presume that the General Assembly did not intend such an absurd or unreasonable result. See 1 Pa.C.S. § 1922(1).
For the reasons stated above, I would overrule Dean ,[10] apply the duty set forth in Snyder , and adopt the test outlined by Justice Newman in her Dean dissent. Under Snyder , the Commonwealth has a duty to ensure that "the condition of [Commonwealth] property is safe for the activities for which it is regularly used, intended to be used[,] or reasonably foreseen to be used." Snyder , 562 A.2d at 312. Under the real estate exception, the Commonwealth waives immunity when "the condition of government property created a reasonably foreseeable risk of harm that actually happened." Dean , 751 A.2d at 1135 (Newman, J., dissenting). A vehicular accident is a reasonably foreseeable consequence of highway travel. As such, although the Commonwealth is not the guarantor of every passing highway visitor's safety, see id. at 1134, n.8, the Commonwealth has a duty to ameliorate latent dangers on the roadway and make the surrounding area that it owns or controls reasonably safe in the event of an accident. If the Commonwealth fails to do so, either by failing to install a guardrail where necessary or by installing a defective one, the Commonwealth has created a reasonably foreseeable risk of harm. When a plaintiff is injured by an unsafe condition on Commonwealth realty, whether the condition is created by omission or commission, under circumstances that would otherwise impose liability on a private landowner, the Commonwealth is exposed to potential liability regardless of whether the danger was associated with the highway itself or with its immediate surroundings. In the instant case, a defective guardrail affixed to Commonwealth realty allegedly injured the Cageys after they veered off the road. Applying the aforementioned test, the Cageys have pleaded sufficient facts to show that the Commonwealth has waived immunity pursuant to the real estate exception.
I hasten to note that this approach would not open the proverbial floodgates to unbounded Commonwealth liability. By no means does the Commonwealth's waiver of immunity guarantee a plaintiff's recovery. While the waiver of immunity exposes the Commonwealth to potential liability, a plaintiff nonetheless must plead and prove a prima facie claim of negligence to survive the pleading stage, *475 must then survive dispositive motions, and must then prevail at trial. As with all litigation-against the Commonwealth or a private party-only meritorious claims proceed.[11]
I would overrule Dean, and I would adopt the test outlined by Justice Newman in her Dean dissent. I concur in the result and the reasoning of the Majority, subject to the limitations expressed herein.

Notably, the General Assembly has not waived immunity for strict liability claims. See Jones v. SEPTA , 565 Pa. 211, 217 n.1, 772 A.2d 435, 439 n.1 (2001) (citing 1 Pa.C.S. § 2310 ) (indicating that the Commonwealth shall enjoy sovereign immunity and remain immune from suit except as the General Assembly specifically waives immunity) ); 42 Pa.C.S. § 8522(a) (indicating that the General Assembly waives sovereign immunity for damages arising out of negligent acts only); accord Rooney v. City of Phila. , 623 F.Supp.2d 644, 662 (E.D.Pa. 2009) (holding that a local government was immune from plaintiffs' strict liability claims because, in Pennsylvania, exceptions to governmental immunity are limited to claims of negligence).

There is, of course, the nuance that governments are often not the designers of products integrated into highway system infrastructures, such as guardrails, but rather, acquire such products through the procurement system. Such additional complexities may also be relevant to the liability assessment in this arena, and, again, because liability is not sharply in focus here, I would refrain from making specific pronouncements.

This is not to say that the discretionary-functions dynamic might not, in some circumstances, be relevant within the framework of a strict construction analysis. No such arguments are presented here, however, and thus I will refrain from further comment along these lines as well.

Subsection 8522(b)(4) of the Act waives Commonwealth immunity for "[a] dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency." 42 Pa.C.S. § 8522(b)(4).

Although the Cageys characterize themselves as licensees, I agree with the Majority that, pursuant to Atkins v. Urban Redevelopment Auth. of Pittsburgh , 489 Pa. 344, 414 A.2d 100, 103 n.2 (1980), the Cageys are better characterized as invitees. See also Restatement (Second) of Torts § 332 (1965).

Under Section 343 of the Restatement (Second) of Torts, "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts S § 343 (1965).

A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
(a) are traveling on the highway, or
(b) foreseeably deviate from it in the ordinary course of travel.
Restatement (Second) of Torts § 368 (1965).

See Winegardner v. Springfield Twp. , 258 Pa. 496, 102 A. 134, 135 (1917) ("It is the duty of a township to exercise reasonable care to keep its highways in a safe condition for ordinary travel .... This duty is not confined to maintaining the bed of the road in a solid and safe condition and clear of obstructions, but extends to the erection of barriers or other devices for guarding unsafe or dangerous places on or along the road. If a public road through a township is so dangerous by reason of its proximity to a precipice that common prudence requires extra precaution, in order to secure safety to travelers, the township is bound to use such precaution, and the omission to do so is negligence.").

See generally In re Paulmier , 594 Pa. 433, 937 A.2d 364, 370-71 (2007) (opining that overruling precedent is appropriate when two cases are irreconcilable).

Today's Majority insists on keeping Dean alive (albeit on life support) notwithstanding that the Majority itself appears to confirm that its ruling here has hollowed out that precedent by "reject[ing] Dean's 'safe for travel on the roadway' rationale entirely ...." Maj. Op. at 466 n.6. The Majority maintains this precarious posture on the basis that Dean 's "safe for travel on the roadway" holding was "not a 'decisional rationale' of significance ...." Id . Respectfully, I find this view puzzling.
Dean 's "travel on the roadway" language was patently decisional: it was included within the paragraph announcing the Court's ruling; it was stated within the context of "applying this law to the instant case;" and it was prefaced as a restatement of this Court's position. See Dean , 751 A.2d at 1134. Indeed, at the time, Justice Nigro saw that language as decisional, see Dean , 751 A.2d at 1135 (Nigro, J., dissenting) ("If, as the majority contends, the absence of a guardrail does not affect the safety of the road for travel, I question why the Commonwealth would ever place a guardrail on a highway in the first place."), as have countless Commonwealth Court panels since. The Majority cannot now transform dispositive and precedential language in Dean into material that is not "decisional" simply by declaring that, while it rejects Dean 's words, it somehow does not reject or overrule Dean 's conclusion.
The Majority's view notwithstanding, the Cageys have in fact requested that we overrule Dean . See Reply Brief for Cagey at 2-3 ("If it is true that the safe for travel on the roadway language should be considered one of the decisional rationales supporting the holding in Dean , it is contrary to the broad scope of the language of the real estate exception, and should be distinguished, clarified or overruled."). I would accept this invitation. Considering the questions that arise in the context of this case, and contemplating the havoc that Dean has wrought (and continues to wreak) in our law, as well as the problems it will likely cause and perpetuate if left undisturbed, the validity of Dean 's rationale is before us today. See William Penn Sch. Dist. v. Pennsylvania Dep't of Educ. , ---Pa. ----, 170 A.3d 414, 447 n.49 (2017) ("We would encourage the perpetuation of poorly reasoned precedent were we to permit ourselves to revisit the soundness of our case law only when expressly invited to do so based upon a given party's tactical decision of whether to attack adverse case law frontally (always a gamble against long odds) or to attempt more finely to distinguish the adverse decisions. The scope of our review is not so circumscribed.") (citing Freed v. Geisinger Med. Ctr. , 607 Pa. 225, 5 A.3d 212, 231 (2010) (noting that testing the validity of the Superior Court's ruling distinguishing one of our prior cases may entail reviewing the validity of the precedent in question) ) ).

See , e.g. , 36 P.S. § 670-401 (requiring that the Commonwealth "construct or improve, and thereafter maintain and repair, at the cost and expense of the Commonwealth, the highways forming the plan or system of the State highways, in the several counties and townships"); 36 P.S. § 670-416 (requiring the Commonwealth to construct sidewalks "[w]henever it shall appear that any part or portion of a State highway in any township is dangerous to the traveling public, and such danger could be materially reduced or lessened by the construction of a sidewalk").

See Dean , 751 A.2d at 1134 n.9 ("Following the dissent's position to its logical conclusion would expose the Commonwealth to unlimited liability, a result clearly not intended by the legislature in enacting the sovereign immunity statute.").

I would also clarify Snyder to the extent that its "absence of lighting" language seems to imply that the absence of any and all safety features cannot render Commonwealth realty dangerous. As noted supra , under our common law, a plaintiff may pursue a negligence claim against a landowner for failing to make her property reasonably safe, which necessarily includes the installation of reasonable safety features. Likewise, Dean 's extension of this rationale to guardrails provides yet another reason to overrule Dean .

In order to survive dispositive motions and prevail at trial, a plaintiff also must plead and prove that the Commonwealth realty at issue was, in fact, dangerous. Plainly, the Commonwealth need not install guardrails on every inch of Commonwealth-maintained highway. As noted by Justice Newman in her Dean dissent, the absence of a guardrail could not be considered a dangerous condition of Commonwealth realty when prevailing engineering standards would not mandate their inclusion. Dean , 751 A.2d at 1136 (Newman, J., dissenting). Similarly, the absence of a guardrail does not, in and of itself, waive Commonwealth immunity. As noted supra , waiver of immunity is inherently limited by traditional negligence principles like reasonableness, foreseeability, and causation.