## Novak *v.* Ford City Borough, Appellant.

*Negligence—Boroughs—Park—Electric wire — Children's playground—Attractive nuisance—Constructive notice—Time.*

1. Electricity is a highly dangerous agency and those using it must exercise the highest degree of care consistent with its practical operation.

2. Public places where children are accustomed to play should be safeguarded against that which is likely to cause their harm.

3. Where a borough in a public park used by children, strings a highly-charged electric wire at such distance from the ground

that, when sagging, children can jump and catch it, or in such location that it may be reached from the base of a monument, and a child catches the wire to pull it down, and is injured, the case against the borough is for the jury.

4. In such case, the borough has constructive notice of the condition of the wire and of the sagging, where it appears that it was in a dangerous condition months before the accident.

5. On the question of constructive notice it is competent to show the thing complained of had long existed.

*Appeals—Verdicts—Excessive verdict.*

6. The power of an appellate court to supervise the amount of a verdict is exceptional and to be exercised only in a very clear case.

7. The question of the excessiveness of a verdict is always for the court below in the first instance, and, if there is no abuse of judicial discretion, its action in refusing to disturb the damages awarded, will be sustained on appeal.

8. Under the evidence in the case a verdict of $5,270.75 for injuries to a boy eight years old was sustained.

Mr. Justice SCHAFFER dissented on the question of the amount of the verdict.

Argued March 13, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 27, March T., 1928, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1925, No. 348, on verdict for plaintiff, in case of Stanley Novak, by his father and next friend Joseph Novak, and Joseph Novak, in his own right, v. Ford City Borough. Affirmed.

Trespass for injuries to boy eight years old. Before GRAFF, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for Stanley Novak for $5,-270.75, and for Joseph Novak for $150. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record,

*H. A. Heilman,* with him *C. O. Morris,* for appellant. —The degree of care required should depend upon the situation or the circumstances, and not upon the practical operation of any particular plant: Sebring v. Telephone Co., 275 Pa. 131; Kepner v. Traction Co., 183 Pa. 24; Livingstone v. Rys., 64 Pa. Superior Ct. 593.

The court erred in leaving the case to the jury: Rugart v. Baking Co., 277 Pa. 408; Brace v. Kirby, 43 Pa. Superior Ct. 389; Douglass v. Ry., 209 Pa. 128; Puritan Coke Co. v. Clark, 204 Pa. 556; Bruggeman v. York, 259 Pa. 94; Gawronski v. McAdoo, 266 Pa. 449.

The verdict was excessive: Windle v. Davis, 275 Pa. 23.

*Harry C. Golden,* with him *E. O. Golden,* for appellees. —The duty to inspect electric wires is clear, and failure to perform it negligence: Sebring v. Telephone Co., 275 Pa. 131.

There was constructive notice of the condition of the wire: Rinker v. Iron Co., 68 Pa. Superior Ct. 258; Hoober v. Water Co., 56 Pa. Superior Ct. 536.

The case was for the jury: Costanza v. Coal Co., 276 Pa. 90.

The verdict was proper: Willenpart v. Elevator Co., 269 Pa. 131.

OPINION BY MR. JUSTICE WALLING, April 9, 1928:

Captain J. D. Ford gave a park site to the defendant borough, which it accepted, and erected therein a monument to his memory, which stands on a grass-covered mound, some fifty feet in diameter and five feet in height. Above the mound and near the monument, the borough strung an electric wire supported by poles and used in lighting the park, and when so doing it carried a current of twenty-three hundred volts. While playing on this mound on the evening of April 26, 1925, Stanley Novak, the minor plaintiff, then about eight years of

age, was seriously and permanently injured by coming in contact with this wire. The suit brought against the borough for damages thus sustained resulted in a verdict and judgment for the plaintiff and defendant has appealed.

In view of the verdict we must accept the truth of the evidence for plaintiff; so doing, there is no cause for reversal. It appears the mound was used as a children's playground, over which the defendant had suffered this high voltage wire to remain for months in such a sagged condition that it was only about four or five feet from the ground, and that the minor plaintiff, innocent of the danger, was hurt when he caught hold of the wire to pull it down for some little girls to swing upon. There was also some evidence that the insulation was worn from the wire at the place in question. The latter was controverted and is not important for the proof indicated that contact with a wire carrying such a voltage would cause injury regardless of the insulation. It needs no argument to show that suffering a high voltage wire to remain so near the ground in a place frequented by the public was evidence of negligence. Even conceding that the wire was six or six and one-half feet from the mound, as stated by a majority of defendant's witnesses, the question of negligence would still have been for the jury. The trial judge properly instructed them that electricity was a highly dangerous agency and those using it must exercise the highest degree of care consistent with its practical operation. This accords with a long line of cases, among which are Kingan v. Duquesne Light Co., 287 Pa. 280; Lynch v. Myersdale E. L., H. & P. Co., 268 Pa. 337. It was defendant's duty to place the wire safely and keep it so by inspection and repair. If from any cause it unduly sagged, the defendant should have found and repaired it. See Schrull et al. v. Phila. Sub. G. & E. Co., 279 Pa. 474. Public places where children are accustomed to play should be safeguarded against that

which is likely to cause them harm: Costanza v. Pittsburgh Coal Co., 276 Pa. 90; Gawronski v. McAdoo, 266 Pa. 449.

There was no proof of actual notice to the borough that the wire was down, but ample of constructive notice. There was evidence that it was thus down two months before the accident, also one month before and two weeks before. There was further the testimony of two ladies, one of whom was slightly hurt by it, that it was down in the same condition the preceding summer. Appellant strenuously contends that the latter should have been rejected as too remote. This contention cannot be sustained in view of the testimony tending to show that the position of the wire remained unchanged. Among other evidence, that of the street commissioner was to the effect that the wire ever remained in the same position, he estimating about six feet high, although there was some oral evidence that the wire had been tightened up about three weeks before the accident. On the question of constructive notice it is competent to show the thing complained of had long existed (Rinker v. Colonial Iron Co., 68 Pa. Superior Ct. 258), for example that a highway had long been in disrepair. In the instant case, whether the position of the wire had been changed since the previous summer was a disputed question and for the jury.

It was defendant's contention, supported by some evidence, that the boy reached the wire by climbing up on the stone ledges of the monument. In view of which, defendant submitted requests three and four, the refusal of which is sufficiently justified in the opinion of the trial court, refusing a new trial, as follows: "The seventh reason complains of the refusal of the defendant's third point, to-wit: 'If the jury believe that immediately prior to the accident the wire was between six and seven feet above the grade of the mound, then before you can convict the defendant of negligence you must find that it could have been reasonably anticipated

that children would climb up the monument to reach the wire.' The point is not valid for the reason that it excludes the possibility of the boy jumping from the ground to grasp the wire six feet high. It was not shown that such was impossible [or even improbable].

"The eighth reason complains of the refusal of defendant's fourth point, to-wit: 'If the jury believe, under these circumstances, that the injury resulted from the unexpected cause, to-wit, climbing up the monument by Stanley Novak, to reach the wire, there can be no recovery in this case.' It was a question for the jury to determine whether climbing upon the lower part of the monument was an unexpected cause or an event not to be anticipated."

The first ledge or step on the monument was only thirteen inches from the ground and whether it should have been anticipated that children by climbing thereon would come in contact with the wire was for the jury to say, hence, defendant's second point which stated, inter alia, "The municipal authorities were not bound to anticipate that children would climb up the monument in question and jump for an electric wire which was out of their reach," was properly refused. It was natural for the boy to grab the wire and being a mere child he could not, as a matter of law, be convicted of contributory negligence for so doing. See Morris v. Jefferson Electric Co., 278 Pa. 361.

The verdict of $5,270.75 for the boy was probably larger than we, if sitting as jurors would have found, but not so grossly excessive as to warrant our interference. "The power of this court, conferred by the Act of 1891, to supervise the amount of a verdict, is, as we have repeatedly held, exceptional and to be exercised only in very clear cases. The question of the excessiveness of a verdict is always for the court below in the first instance, and, in the case before us, we have not been convinced of any abuse of judicial discretion in refusing to disturb the damages awarded to the plain-

tiff": Willenpart v. Otis Elevator Co., 269 Pa. 131, 132. The injuries here were serious, consisting mainly in the loss of the little finger of the left hand and the adjoining or ring finger, each at the knuckle joint. This is a permanent loss and in future years will be a handicap to him in some occupations and in securing or retaining desirable employment. The boy was left handed, although ambidextrous, and, in addition, the accident proved unusually painful, as for eight months the doctor tried in vain to save the ring finger. Other complaints do not seem to require special mention.

The judgment is affirmed.

Mr. Justice SCHAFFER dissented on the question of the amount of the verdict.