540 A.2d 635

Robert Lynch, a minor by and through his mother, Charlesetta Brown, and Charlesetta Brown, Appellants *v.* National Railroad Passenger Corporation (Amtrak) et al., Appellees.

Argued February 22, 1988, before Judges MacPhail and Colins, and Senior Judge Narick, sitting as a panel of three.

*Donald E. Matusow*, with him, *Michael E. Sacks, Litvin, Blumberg, Matusow & Young*, for appellants.

*Miriam B. Brenaman*, with her, *Handsel B. Minyard*, City Solicitor, *Armando A. Pandola, Jr.*, Chief Deputy in Charge of Claims, *Barbara R. Axelrod*, Divisional Deputy in Charge of Appeals, and *Ralph J. Luongo*, Assistant City Solicitor, for appellee, City of Philadelphia.

OPINION BY JUDGE MACPHAIL, April 27, 1988:

Robert Lynch and his mother, Charlesetta Brown (Appellants) appeal from the order of the Court of Common Pleas of Philadelphia County of November 6, 1985 denying Appellants' second Petition for Reconsideration and reinstating and affirming its order and opinion of March 18, 1985 and its supplemental opinion of August 1, 1985.[1] The March 18, 1985 order sustained the preliminary objections in the nature of a demurrer of the City of Philadelphia (City) and dismissed Appellants' complaint with prejudice with respect to the City. It is this decision that is before us, and we affirm.

From the factual allegations in the complaint, we ascertain that the Appellant, Robert Lynch, age 11, on August 18, 1984, was crossing the railroad tracks near his home when he somehow fell on the tracks and a train ran over his legs, severely injuring him. Robert had gone to the City-owned playground and pool, located on one side of the tracks, to go swimming. When he discovered that the pool was closed, he went through a hole in the City-owned fence separating the playground from the railroad tracks. He was crossing the tracks to reach a vacant lot, also owned by the City, located on the other side of the tracks. Robert and his friends had a clubhouse on the vacant lot where they often played. The City also had a fence separating the vacant lot from the tracks through which there also was an opening.

City contended that it breached no duty owed to Robert in the circumstances of this case. The trial court agreed.

Appellants based their allegation of liability on several theories which we now address, bearing in mind that a demurrer admits all well pleaded facts and rea-

---

[1] All prior final orders addressing the merits of the case were timely vacated by the trial court.

sonable inferences deducible therefrom. *Wells v. Southeastern Pennsylvania Transportation Authority,* 105 Pa. Commonwealth Ct. 115, 523 A.2d 424 (1987). A demurrer, furthermore, cannot be sustained unless it is clear on the face of the proceeding that the claimant cannot prevail and that the law will not permit the recovery sought therein. *Id.*

The major focus of Appellants' arguments is to distinguish the instant case from the case of *Kearns v. Rollins Outdoor Advertising, Inc.,* 89 Pa. Commonwealth Ct. 596, 492 A.2d 1204 (1985), wherein we affirmed the trial court's grant of summary judgment to the City where a minor passed through a hole in the chain link fence around a City playground, proceeded to climb a billboard situated nearby on adjacent property and then fell, severely injuring himself. We held that one who has suffered injuries as the result of encountering a hazardous condition on *another's* land cannot recover damages from the owner of the land over which he passed to reach the land on which the allegedly dangerous condition existed.

Appellants attempt to distinguish *Kearns* on the basis that the injured youth in *Kearns* was merely passing through the baseball field of a city playground, and through a hole in the playground fence, on his way from a cemetery where he had been drinking beer to a billboard located on land adjacent to the playground. Robert, on the other hand, was intentionally going to the playground itself for the purpose of using the playground pool and only upon his arrival and discovery of the closed pool did he decide to pass through the hole in the fence. This distinction, however, does not change the fact that Robert's injuries did not occur *on the playground.*

We likewise are unpersuaded by Appellants' focus on the importance of the fact that the City owned the

land on both sides of the tracks at the subject location. The fact remains that the City's duty is owed only to those who are injured on the City's property.

To escape the problem of the clear fact that the injuries occurred on adjacent land, Appellants argue that Robert's injuries were actually caused by a dangerous condition on the *City's* land. The dangerous condition named by Appellants is the hole in the playground fence and the failure of the City to prevent the movement of people between the two properties on either side of the tracks. Appellants cite no case law to support this novel argument. In *Heller v. Consolidated Rail Corporation*, 576 F. Supp. 6 (E.D. Pa. 1982), *aff'd*, 720 F.2d 662 (3d Cir. 1983), the Court, at page 12, quoting Pennsylvania case law, said:

> No case has been brought to our attention wherein there has been imposed upon a possessor of land a duty to erect fencing or other protective devices or warnings to deter trespassing children from entering a third person's property on which there exists a dangerous condition not created or maintained by the landowner and over which he has no control.

That court granted summary judgment in favor of the defendant.

In *Cousins v. Yaeger*, 394 F. Supp. 595 (E.D. Pa. 1975), summary judgment was entered against the defendant where a minor plaintiff was injured when struck by a train after allegedly crossing over land owned by the defendant which was adjacent to the railroad tracks, the Court again holding that there was no duty to deter trespassing children from entering a third person's property. We conclude that the City's ownership of vacant land on the other side of the tracks in the present case creates no exception to the general rule of law set forth in *Heller*.

Appellants next argue that by erecting the playground fence, the City voluntarily assumed a duty to maintain the fence as provided in Restatement (Second) of Torts §323 (1963).[2] Appellants contend that while the Restatement only requires either an increased risk of physical harm for failure to exercise reasonable care to perform an undertaking or reliance upon the undertaking, both elements are present in the instant case, and therefore the City was negligent. This argument presents an interesting proposition, but we must dismiss it nonetheless.

Although no appellate courts in Pennsylvania have specifically applied Section 323 of the Restatement to facts similar to those here presented,[3] we note that when our Supreme Court adopted Section 323 as an accurate statement of the law in *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983) it said, "[i]t [Section 323] does not, however, change the burden of a plaintiff to establish the underlying elements of an action in negligence, *nor can it be invoked to create a duty where one does not exist." Id.* at 642, 462 A.2d at 684 (footnote omitted, emphasis added). Having deter-

---

[2] Section 323 states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

[3] *See Scarborough v. Lewis,* 359 Pa. Superior Ct. 57, 518 A.2d 563 (1986) and dissent by Senior Judge KALISH in *Hayes v. Philadelphia Electric Co.,* 92 Pa. Commonwealth Ct. 205, 498 A.2d 1019 (1985).

mined in *Kearns* that no duty existed on the part of the City to erect the fence in the first instance, we do not believe that the City's failure to maintain it properly can be a basis for liability under Section 323.

In order to maintain a cause of action against a municipality, the action must first be one which would be allowable by statute or by common law against a party not protected by immunity. 42 Pa. C. S. §8542(a)(1) and *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). Although Appellants strenuously argue that the facts of this case bring them within the exception to governmental immunity as set forth in 42 Pa. C. S. §8542(b)(3), relating to the care, custody and control of real property in the possession of the governmental unit being sued, Appellants must first satisfy the requirement that Robert's claim for damages is recoverable by statute or under common law. As we have previously noted, *Kearns* and the cases cited therein make it plain that there is no statutory or common law basis for recovery where the injury occurs on neighboring property for which the city maintains no responsibility.

In addition, the so-called real estate exception does not apply where the injury sustained was inflicted by a third person over whom the municipality had no control. *Mascaro*. Here, had Robert been injured *by* the condition of the fence rather than being struck by a train, the exception might apply; since that was not the case, the City is immune from suit.

Because Appellants have averred no factual allegations which would entitle them to recovery under any valid theory of law, nor do those allegations entitle them to an exception under 42 Pa. C. S. §8542(b)(3), we must affirm the decision of the trial court sustaining the City's demurrer.

ORDER

The decision of the Court of Common Pleas of Philadelphia County sustaining the Preliminary Objections of the City of Philadelphia in the above-captioned matter is hereby affirmed.