565 A.2d 122

**Edward SCARBOROUGH, a minor, by his parent and natural guardian, Patricia SCARBOROUGH, and Patricia Scarborough, in her own right, Appellees,**

**v.**

**Andrew L. LEWIS and Joseph L. Castle, trustees for Reading Company and City of Philadelphia, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1988.

Decided Oct. 16, 1989.

Seymour Kurland, City Sol., Norma S. Weaver, Deputy in Charge of Claims, Barbara R. Axelrod, Divisional Deputy in Charge of Appeals, for appellants.

E. Parry Warner, Philadelphia, for Lewis & Castle.

James E. Beasley, Philadelphia, for Scarborough.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

ZAPPALA, Justice.

We granted allowance of appeal to the City of Philadelphia (City) to determine whether Superior Court erred in affirming in part an order of the Court of Common Pleas of Philadelphia County, sitting en banc, insofar as it denied the City's post-trial motion for judgment notwithstanding the verdict.[1] Because the City properly preserved the issue of whether it owed a duty to the Appellee, Edward Scarborough, contrary to the Superior Court's holding that the issue was waived, the order of Superior Court is in part reversed and the City's motion for judgment not withstanding the verdict is granted.

The facts underlying this personal injury action are that on June 24, 1974, Edward, then aged nine, was playing

1. We denied the Scarboroughs' petition for allowance of appeal on May 20, 1988. In the petition, the Scarboroughs raised four issues for our consideration, which all focused on whether Superior Court erred in granting a new trial based upon the trial judge's answer to a question posed by the jury.

basketball with his friends along Thirteenth Street, a dead end street in the City of Philadelphia. When he took a shot at the basket, the ball ricocheted off of the backboard, rolled to the end of the street and through a chain link fence, which stretched to the adjacent McFerran Street, and down an embankment toward the railroad tracks. Edward climbed through a hole in the fence and down the embankment to recover the ball. He then walked back up the embankment and threw the ball under the fence. Instead of returning to the basketball game, Edward, who heard a train approaching, went back down the embankment to the railroad tracks, which were readily accessible by various other routes. He then, as he had done before, hopped a freight train owned by the Reading Railroad Company. After travelling a short distance he tried to hop off the train; however, his pant leg got caught. In the process of trying to loosen it, he slipped and fell under the wheels of the train. Both of Edward's legs were severed just below his knees.

Appellees, Edward Scarborough and his mother Patricia Scarborough, instituted this action for damages in 1976 against Andrew L. Lewis and Joseph L. Castle, trustees for the Reading Company (hereinafter referred to collectively as Reading). Reading joined the City as an additional defendant on the grounds that it had failed to keep the fence in repair and had thereby breached a duty owed to Edward Scarborough to protect him from the dangerous condition created by the movement of trains on the railroad's property.[2]

Following a jury trial in April, 1981 before Judge I. Raymond Kremer, a verdict was returned against both Reading and the City in favor of Edward Scarborough in the amount of $3,000,000 and in favor of Patricia Scarborough in the amount of $300,000. Delay damages pursuant to Pa.R.C.P. 238 were added and the verdicts were molded

---

2. The Political Subdivision Tort Claims Act, Act of October 5, 1980, P.L. 693, 42 Pa.C.S. § 8541 et seq. nor its predecessor, Act of November 26, 1978, P.L.1399, 53 P.S. § 5311.101 et seq. were applicable to this case.

to the sums of $3,454,500 and $345,400 respectively. Reading and the City both filed post-trial motions and extensive post-trial briefs.[3] The post-trial motions were argued and denied.[4] On appeal, a Superior Court panel reversed the order of the trial court insofar as it dismissed Reading's motion for judgment n.o.v. As to the City, Superior Court affirmed the trial court's denial of judgment n.o.v., but reversed the denial of a new trial and remanded for that purpose.

On appeal, Reading and the City argued that the Scarboroughs failed to establish a legally cognizable cause of action and that judgment n.o.v. should have been granted. Superior Court in reviewing the record found that the City had failed to present argument in its post-trial brief concerning the source, existence or nature of the duty owed by the City to Edward Scarborough. This finding was based on the fact that the City's post-trial brief addressed only the issue of the existence of a causal connection between Edward's injuries and the City's breach of some unspecified duty. The City's failure to brief the critical duty issue at the close of proceedings, Superior Court concluded, deprived the trial court of both the need and opportunity to address the merits of the City's contention that the Scarboroughs failed to establish a legally cognizable cause of action because, as a matter of law, the City owed no duty to Edward Scarborough. *Scarborough v. Lewis*, 359 Pa.Super. 57, 62–63, 518 A.2d 563, 566 (1986).

In *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974), we set forth the doctrine of waiver and the underlying policy considerations which are:

3. Reading settled with the Scarboroughs while the motions were pending.

4. Post-trial motions were argued on December 10, 1981 before a court *en banc* consisting of the Honorable Stanley M. Greenberg, the Honorable I. Raymond Kremer, the trial judge, and the Honorable Bernard Snyder. Judge Greenberg joined with Judge Kremer in denying all post-trial motions on March 14, 1984. On that date, Judge Snyder chose to recuse himself from participation in this matter.

First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. [Footnote omitted]. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions. [Footnote omitted].

*Id.* 457 Pa. at 259, 322 A.2d at 116–117.

The question presented in the City's post-trial brief was as follows: PLAINTIFF FAILED TO PROVE A LEGALLY COGNIZABLE CAUSAL CONNECTION BETWEEN THE CITY'S *ALLEGED NEGLIGENCE* AND PLAINTIFF'S INJURY, AND JUDGMENT N.O.V. MUST BE ENTERED FOR THE CITY (Emphasis Added). City's Post–Trial Brief p. 8. Examination of the City's post-trial brief reveals that the introduction section sets out at length the City's position that it owed no duty to Edward Scarborough and therefore could not be found negligent. This argument was implicitly incorporated into the question presented for review because, in describing the claim of negligence, the term that was used was *alleged negligence,* an element of which is duty.

Furthermore, as Judge Wieand noted in his dissent, throughout the trial, the City contended that the law did not impose on it a duty to protect the minor child from dangerous activities being conducted on land owned by another. At the close of the Scarboroughs' case, the City moved for a compulsory nonsuit, which was summarily denied by the trial judge. After both parties rested, the City moved for a

directed verdict, which was also denied. The City once again addressed the issue of duty when it submitted points for charge which provided that the City owed no duty to repair defective conditions maintained on property not owned by the City or to protect citizens from dangerous activities conducted on private property owned by others. For these reasons, we find that the issue of duty was implicitly incorporated into the question presented for review and the policy considerations of the waiver doctrine have been satisfied so as to prevent waiver.

■ Because the City's common law duty argument was properly preserved for review, we now address whether such arguments would afford a basis for the City's contention that it was entitled to judgment n.o.v. As we stated in *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980):

> Our standard of review is settled. A judgment n.o.v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Steward v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner. *Miller v. Checker Cab Co.*, 465 Pa. 82, 348 A.2d 128 (1975).

*Id.* 489 Pa. at 351, 414 A.2d at 103. Applying these standards, we have no doubt that Appellees failed to present a legally cognizable cause of action because, as a matter of law, the City owed no duty to Edward.

Appellees argue that where the City undertook to repair a fence in a dangerous area, its failure to maintain the fence created a legal duty under Section 323 of the Restatement (Second) of Torts.[5] Section 323 provides as follows:

> § 323. Negligent Performance of Undertaking to Render Services

5. According to the Appellee's evidence the fence was repaired by the City before this incident and the fence was fixed after the incident. The trial court's instructions to the jury indicated that this was evidence of the City's control of the fence and not its negligence. N.T.1998.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Conversely, the City contends that at common law in Pennsylvania a duty was never imposed on a property owner to those who crossed the owner's land and were subsequently injured by a dangerous condition on the property of another. *Malischewski v. Pennsylvania Railroad Co.*, 356 Pa. 554, 52 A.2d 215 (1947); *Magner v. Baptist Church*, 174 Pa. 84, 34 A. 456 (1896); *Lynch v. National Railroad Passenger Corp.*, 115 Pa.Commw. 474, 540 A.2d 635 (1988), allocatur granted 521 Pa. 632, 558 A.2d 533 (1989). The City also claims that although the jury was charged as to Section 323(b) of Restatement (Second) of Torts, the trial judge removed Section 323 from the case when he later removed reliance from the Section 323 jury instruction.

■ Superior Court agreed with the City's contention that the law imposed no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property. However, the court found this argument of no moment in the appeal because the record revealed the trial court agreed with the statement of the law and charged the jury to that effect in accordance with the City's request. *Scarborough*, 359 Pa. Super. at 65, 518 A.2d at 569. In other words, the jury rejected the aforementioned statement of the law and Section 323 formed the basis of the City's liability.[6]

---

**6.** At trial, Appellees also contended that Police Directive 38 provided a basis for the City's liability. Police Directive 38 directed police officers to report dangerous conditions on city property. In *Mindala v.*

■ The misperception of both Superior Court and Appellees is that Section 323 creates a duty requiring the City to repair the fence. In *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983) we stated that:

This section [323 of Restatement (Second) of Torts] has previously been adopted by this Court as representing an accurate statement of the law. *See Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980). It does not, however, change the burden of a plaintiff to establish the underlying elements of an action in negligence *nor can it be invoked to create a duty where one does not exist.* (Emphasis added).

*Id.* 501 Pa. at 641–642, 462 A.2d at 684.

For this reason, we must ascertain whether the City's contention that no duty exists is supported as a matter of law.

At common law, one charged with the duty of keeping highways and roadways safe for travel was required to take measures to eradicate or reduce the risks posed by steep cliffs and embankments located upon or in close proximity to a highway or roadway. *See Balla v. Sladek*, 381 Pa. 85, 112 A.2d 156 (1955); *Winegardner v. Springfield Township*, 258 Pa. 496, 102 A. 134 (1917) (duty not confined to maintaining the bed of the road but extends to erection of barriers and other devices for guarding unsafe places along the road); and *Scott Township v. Montgomery*, 95 Pa. 444 (1880).

Case law would appear, at first blush, to have imposed a duty on the City to erect a barrier along the dead end of

*American Motors Corporation*, 518 Pa. 350, 543 A.2d 520 (1988), we found that Section 6109 of the Motor Vehicle Code created a duty upon the township police to alert motorists of dangerous highway conditions when it was aware of a missing stop sign and PennDOT's inability to correct the situation. Although Reading received seventy-two complaints of trespassing in the area, Appellees did not establish that the police department was aware of the hole in the fence nor that the trespassers who were the subject of the complaints had used that hole. Consequently, the police department and thus the City did not breach a duty that would have otherwise arisen from Police Directive 38.

Thirteenth Street. However, *Balla, Winegardner* and *Scott Township* can be distinguished from the case *sub judice* by the fact that the duty imposed on a municipality was so as to avoid the danger of vehicles falling from highways or roadways down steep cliffs and embankments. In this case, Edward Scarborough after climbing through the fence and retrieving the basketball on his own volition returned to the railroad tracks to hop a train. This unsupervised activity of a minor child was not the danger sought to be avoided by the creation of a common law duty to erect barriers along a roadway.[7]

Alternatively, it is well settled that the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control. *Kearns v. Rollins Outdoor Advertising, Inc.*, 89 Pa.Commw. 596, 492 A.2d 1204 (1985); *Magner v. Baptist Church, supra; Heller v. Consolidated Rail Corporation*, 576 F.Supp. 6 (E.D. Pa.1982), aff'd 720 F.2d 662 (3d Cir.1983); *Cousins v. Yaeger*, 394 F.Supp. 595 (E.D.Pa.1975). Furthermore, it would be incongruous to impose such a duty upon landowners adjacent to a railroad right-of-way when it long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers. *Dugan v. Pennsylvania Railroad Company*, 387 Pa. 25, 127 A.2d 343 (1956); *Malischewski v. Pennsylvania Railroad Company, supra. Cousins*, 394 F.Supp. at 605. *See also Lynch v. National Railroad Passenger Corporation, supra.*

We also note that the facts of this case are similar to those found in *Malischewski.* There, a minor child gained access from a city playground through a gateway in a wire fence to a railroad right-of-way. Once on the right-of-way, the boy saw a loaded coal car detached from a train standing on the tracks. He climbed on to the car and stood on

7. Ownership of the fence along Thirteenth and McFerran Streets was disputed by both the City and Reading at trial.

the coal. The boy's arm came in contact with a live electrical line causing him injury. We found, *inter alia*, that the defective gateway in the fence was not the proximate cause of the accident. *Malischewski*, 356 Pa. at 556, 52 A.2d at 216. To find such as a matter of law would not be inappropriate here.

The order of Superior Court, insofar as it affirmed that part of the order of the Court of Common Pleas of Philadelphia County denying the City's motion for judgment n.o.v., is reversed and vacated. Based upon the record, we must grant the City's motion for judgment n.o.v.

Jurisdiction relinquished.

McDERMOTT, J., did not participate in the consideration or decision of this case.

STOUT, Former Justice, did not participate in the decision of this case.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I strenuously dissent. It is a gross misconstruction of the English language to conclude that appellant, the City of Philadelphia, preserved for appellate review its claim that it owed no duty to appellee, Edward Scarborough, merely by phrasing the issue it *did* preserve (the issue of causation) in terms of "alleged" negligence. This amounts to no more than a "boilerplate" allegation. We have held that such allegations constitute "a lack of diligence" on the part of counsel, and we consider the issues raised in such fashion to be waived. *See In re Estate of Hall*, 517 Pa. 115, 137–38, 535 A.2d 47, 58 (1987). The issue of appellant's duty is not raised in appellant's post-trial motions nor is there any argument in appellant's post-trial brief plumbing the depths of the law of this Commonwealth regarding the source, existence or nature of the duty owed by appellant to appellee. Thus, the issue was waived, and the majority of this Court is retreating from our fifteen year clear and wise

pronouncement set forth in *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

Accordingly, I would affirm the order of Superior Court and would remand the case to the Court of Common Pleas of Philadelphia County for a new trial.

PAPADAKOS, J., joins in this dissenting opinion.