573 A.2d 1016

Robert C. GARDNER, a minor by his parents and natural guardians, Russell Q. GARDNER and Eleanor Maisey, in their own right, Appellants,

v.

CONSOLIDATED RAIL CORPORATION SEPTA and City of Philadelphia, Appellees.

Robert LYNCH, a minor, By and Through his mother, Charlesetta BROWN and Charlesetta Brown, Appellants,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), Consolidated Rail Corporation (Conrail), Southeastern Pennsylvania Transportation Authority (SEPTA) and City of Philadelphia, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 27, 1989.

Reargued Jan. 22, 1990.

Decided April 26, 1990.

446

Gregory John Hannon, Stanley M. Shingles, Donald E. Matusow, Philadelphia, for appellants.

Michael McGilvery, Perry S. Bechtle, Philadelphia, for Conrail/SEPTA at No. 22.

David Faust, Philadelphia, for AMTRAK, CONRAIL & SEPTA at No. 40.

Seymour Kurland, City Sol., Miriam Brenaman, Chief Asst. City Sol., for City of Philadelphia at Nos. 22 & 40.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

These cases, consolidated for appeal, raise the question of whether a city may be held liable when children going to or from holes in city-owned fences are injured on neighboring land through instrumentalities not created by the city and not in the city's control.

In *Gardner*, a seven year old boy was injured by a train on land owned by a third party after he climbed through a hole in a fence bordering railroad tracks and attempted to cross the tracks on his way to another hole in a fence on the other side of the tracks next to a municipal playground. Gardner's theory of recovery was that the city, which owned one fence, and SEPTA and Conrail, which owned the other, all contributed to his injury by allowing holes to exist in the fences, and that these holes constituted an attractive nuisance in the form of a "tunnel" which invited children to crawl through it and thereby risk injury on the train tracks.[1] In *Lynch*, an eleven year old boy was also injured by a train when he and a companion climbed through a hole in a city-owned fence situated alongside railroad tracks in order to cross the tracks on their way to a hole in another city-owned fence bordering a vacant lot on the other side of

---

1. There is a dispute as to whether the city owns both fences or only one. Because of our disposition of this case, the disputed ownership of the second fence is a moot question.

the tracks where they intended to play. The vacant lot was also owned by the city.

*Lynch* was dismissed on preliminary objections in the nature of a demurrer, and the dismissal was affirmed by Commonwealth Court,[2] 115 Pa.Cmwlth. 474, 540 A.2d 635.

In *Gardner*, the city's motion for summary judgment was granted and Commonwealth Court affirmed on appeal.[3] Although there are procedural differences in these cases, the substantive question and the reason for the allowance of appeal is the same: viz., whether the city may be found liable for failing to maintain its fences in these circumstances.

 The statutory scheme governing the city's liability in this case is as follows:

### § 8541. Governmental immunity generally

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

### § 8542 Exceptions to governmental immunity

**(a) Liability imposed.** A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

2. Commonwealth Court in *Lynch* held that the city owed no common law duty to the injured child to protect him from dangers on adjacent land; that the city had no duty to maintain the fence around the playground; and that the facts alleged did not fall within the real estate exception the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(3).

3. Commonwealth Court in *Gardner* held that an adjacent property owner is not liable for injuries not occurring on his property because such injuries are not causally related to the adjacent property owner's actions; that the plaintiffs do not have a cause of action at common law, and therefore that the city is insulated from liability by the Political Subdivision Tort Claims Act.

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)....

**(b) Acts which may impose liability.** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

\* \* \* \* \* \*

**(3) Real property.** The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency....

42 Pa.C.S. §§ 8541, 8542(a) and (b). In sum, in order for the appellants herein to recover, there must be, as a threshold matter, a cause of action at common law allowing the recovery of damages on these facts against a person not protected by governmental immunity, and the agency or its employees must have been negligent with respect to the care, custody or control of real property.[4]

Only four months ago, this Court in *Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122 (1989) decided a case which is virtually identical to the present cases. In *Scarborough* a nine year old boy was playing basketball on a city playground which was situated alongside railroad tracks. When the ball went over the playground fence, the boy climbed though a hole in the fence and down an

**4.** Moreover, as this Court held in *Mascaro v. Youth Study Center,* Section 3 is to be narrowly construed in order to give effect to the legislative intent to insulate political subdivisions from tort liability. 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987).

embankment to retrieve the ball. Upon retrieving the ball, he threw it under the fence into the playground, but then went back down the embankment towards a train which he heard coming. He hopped aboard the train, as he had done before, but when he tried to get off the train, his pant leg got caught and his legs were severed below the knees.

■ In addressing arguments very similar to those raised in these cases, we held that the city had no duty to repair the fence or to erect a barrier in order to contain the unsupervised activity of a minor child; that there is no duty upon a possessor of adjacent land to erect a fence or provide warnings to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control; and that it would not be inappropriate to hold as a matter of law that the "defective gateway" or hole in the fence was not the proximate cause of the injuries sustained. 523 Pa. at 40, 565 A.2d at 125–26.

*Scarborough* holds, then, that the city has no common law duty to erect or repair its fences, at least as to plaintiffs who are injured on neighboring land, not on or by city property. Absent a duty at common law requiring the city to repair its fences, appellants herein cannot prevail.

Nonetheless, appellants would have us create a duty where none presently exists. For the following reasons, we decline to do so. First, there is strong indication that it was the intent of the General Assembly that the requirement in the Political Subdivision Tort Claims Act of a common law basis for an action against government agencies be construed so as to prohibit the creation of any new causes of action:

> The intention here [requiring a common law or statutory basis of recovery against a governmental unit] is to prohibit the creation of any new causes of action and merely to remove the bar from suit where the cause of action already exists in the enumerated areas.

*Sovereign Immunity,* The Joint State Government Commission, (Harrisburg, Pa., 1978), 11.[5] Secondly, even if this were not clear, it would be jurisprudentially unsound and in violation of the fundamental principle of *stare decisis* for this Court to unsettle an area of law which we settled only four months ago. And finally, even if we were free to consider expanding the common law duty of cities to repair their fences without regard to legislative intent or our former precedent, the arguments in favor of such expansion are without merit.

■ Various sections of the Restatement (Second) of Torts are cited as authority for the view that the city has a duty with respect to those who cross through defective fences and are subsequently injured on neighboring property. Section 365, for example, provides:

Section 365. Dangerous Disrepair

A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure or other artificial condition thereon, if the exercise of reasonable care by the possessor. . . .

(a) would have disclosed the disrepair and the unreasonable risk involved therein, and

(b) would have made it reasonably safe by repair or otherwise.

The claim that this section of the restatement may serve as the basis for holding that the city has a duty to appellants is without merit because the defective fence did not proximately cause the injury in this or similar cases. The children were not injured by the fence; they merely passed through it. *Accord, Scarborough v. Lewis, supra.*

Next, appellants argue that Section 343 of the Restatement (Second) of Torts imposes a duty on the city to protect against dangerous conditions on its premises:

Restatement (Second) of Torts, Section 343.

**5.** This booklet was published as a recommendation to the General Assembly prior to passage of the act.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Again, the harm to these appellants was not proximately caused by a condition on the land. The fence did not cause the injury. This section of the restatement, therefore, is of no help in creating a duty.

Next, appellants refer to Restatement (Second) of Torts, Section 339, which provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Assuming that this section applies to children who are invitees or licensees as well as trespassing children, the argument in favor of finding a duty as against the city assumes that the unrepaired fences are themselves the instrumentalities of harm. They were not. As stated earlier, there is no proximate causal connection between the fences and the injuries that were suffered.

Next appellants seek to impose a duty of care by reference to Section 323 of the Restatement (Second) of Torts, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

In *Scarborough v. Lewis* we stated:

In *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983), we stated that:

This section [323 of Restatement (Second) of Torts] has previously been adopted by this Court as representing an accurate statement of the law. *See Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980). It does not, however, change the burden of a plaintiff to establish the underlying elements of an action in negligence *nor can it be invoked to create a duty where one does not exist.*

523 Pa. at 38, 565 A.2d at 125. (Emphasis in original). Moreover, Section 323 does not apply to government, for government does not act either gratuitously or for consider-

ation, as is required by Section 323, but pursuant to its required or discretionary duties in the process of governing. Section 323, therefore, cannot be used to create a duty that did not heretofore exist.

Appellants properly point out that the concept of duty, and, as the foregoing should indicate, the related concept of proximate causation,[6] are ultimately policy considerations. This was also expressed by Mr. Chief Justice Nix in the following often quoted passage from *Sinn v. Burd:*

> In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. *Leong v. Takasaki,* 55 Haw. 398, 520 P.2d 758, 764 (1974). To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. The late Dean Prosser expressed this view as follows:

> These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the

---

**6.** As Prosser suggests, the concepts of duty and proximate cause ultimately involve similar policy considerations:

> The ordinary usage of the courts has been to confine the word "duty" to questions of the existence of some relation between the defendant and the plaintiff which gives rise to the obligation of conduct in the first instance, and to deal with the connection between that obligation, once it has arisen, and the consequences which have followed in the language of "proximate cause." The usage is no doubt well enough, so long as it is not allowed to obscure the fact that identical questions are often still involved, and buried under the two terms, sometimes so deeply that a good deal of digging is called for to uncover them.

*The Law of Torts* (Fourth ed.) § 42, p. 245.

decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

486 Pa. 146, 164, 404 A.2d 672, 681 (1979).

We acknowledge that this Court's view of proximate cause, like our view of duty, is necessarily rooted in public policy considerations, i.e., our ideas of history, morals, justice and society in general in determining where the loss should fall. Even so, we must be guided by our recently decided cases on the same subject matter and by our best information as to legislative intent as well as by our sense of history, morals and justice. But even if we were free to decide the issue of proximate causation and duty without reference to our past cases or legislative intent, we would hold that the city has no duty of care with respect to the injuries suffered in these cases and that the poorly maintained fences did not proximately cause the injuries complained of.

Had the children been injured *by the fences* in these cases, our view might well be different, but where the injury is on the land of another and is produced by voluntary exposure to an obvious hazard over which the city had no control, and the only connection between the injury and the allegedly poorly maintained fences is that those injured passed through or walked towards holes in the fences, the holes in the fence are not the proximate cause of the injuries. It follows that the city owes no duty of care to persons who crawl through or walk toward holes in city fences bordering city land and are injured on neighboring land by instrumentalities over which the city has no control

and which the city did not maintain or bring into being.[7]

The lower courts were correct, therefore, in holding, as a matter of law, that recovery in both cases was barred by the Political Subdivision Tort Claims Act.

Affirmed.

McDERMOTT and PAPADAKOS, JJ., concur in the result only.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice.

I dissent.

The issue presented by these two appeals is whether a political subdivision has a duty to maintain safe playgrounds. It is clear to me that when "city fathers" decide to locate a public playground adjacent to property which poses a hazard to the children who are encouraged to use that playground, they are obligated to erect and maintain barriers on the perimeter of the playground to prevent ingress and egress at a location that brings the children into contact with the adjacent hazard. The majority commits a grave error in holding to the contrary.

In the first appeal, on June 19, 1982, appellant, Robert C. Gardner, a seven year old child, tripped and fell upon the railroad tracks that lay between his home and the ballfield which was owned by appellee, the City of Philadelphia. Appellant, on his way to the ballfield, was struck by a passing train and suffered serious injuries, including the amputation of his right arm. Appellant's route across the tracks followed a frequently used shortcut which led from the residential community in which he lived on the north

7. Gardner argues that it was error to grant summary judgment because there remain material issues of fact, such as actual ownership of the two fences, ownership of the playground, the extent to which the city was on notice of the use of the holes in the fences by neighborhood children and facts concerning the maintenance and repair of the fences. This argument is without merit because no matter how these questions are answered, the city would have no duty of care with respect to its fences in the context of the injuries suffered by Gardner, and thus, would be immune under the Tort Claims Act.

side of the railroad tracks, through a hole in a retaining wall, across the railroad tracks, and through a hole in the high fence which surrounds the perimeter of the playground.

Appellants brought an action in trespass against the City of Philadelphia, appellee herein, the Consolidated Rail Corporation (Conrail) and the Southeastern Pennsylvania Transportation Authority (SEPTA). The City denied owning the playground and fence in question and asserted defenses under the Political Subdivision Tort Claims Act (Act). 42 Pa.C.S.A. §§ 8541–8542. The City filed a motion for summary judgment and in support thereof argued that it could not be held liable for an injury occurring on property that was not owned by the City.

The Court of Common Pleas of Philadelphia County granted the City's motion for summary judgment on the grounds that a landowner has no duty to guard against dangerous conditions on adjacent property over which he has no control and that the action was barred by the Act. Commonwealth Court affirmed in a memorandum opinion. Commonwealth Court determined that the imposition of liability in these circumstances would "create an undue burden on all property owners." Slip op. at 6.

In the second appeal, on August 18, 1984, appellant, Robert Lynch, an eleven year old child, left a playground owned by appellee, the City of Philadelphia, to play in a vacant lot located directly across several sets of railroad tracks from the playground. Appellant went through a large hole in the playground's safety fence and started crossing the railroad tracks along a well-worn path when he slipped and was struck by a train. Both of appellant's legs were severed below the knee.

Appellants filed an action in trespass against the City, the National Railroad Passenger Corporation (AMTRAK), Conrail, and SEPTA. The City filed preliminary objections, claiming that it had no duty to fence its property to keep individuals from entering adjoining property on which a dangerous condition exists. The Court of Common Pleas of

Philadelphia County dismissed the claims against the City with prejudice, and Commonwealth Court affirmed, finding that the City had no duty to fence the playground or to maintain the fence once it had been installed.

Mr. Justice Flaherty, writing for the majority, states that "the city has no common law duty to erect or repair its fences, at least as to plaintiffs who are injured on neighboring land, not on or by city property." Maj. op. at 450. I disagree.

It has long been the law of this Commonwealth that public parks or playgrounds must be maintained in a reasonably safe condition for those invited to come upon such property. *See Paraska v. Scranton*, 313 Pa. 227, 169 A. 434 (1933) (city must take care, especially in the case of playgrounds, in keeping property in reasonably safe condition); *Novak v. Ford City Borough*, 292 Pa. 537, 141 A. 496 (1928) (public places where children usually play should be safeguarded against hazards that are likely to harm them); *Weber v. Harrisburg*, 216 Pa. 117, 64 A. 905 (1906) (city has duty of seeing that public parks are not dangerous to public). Moreover, we have held that municipalities have a duty to guard pedestrians where the roads on which they walk drop off precipitously into creeks. *Haughney v. Mahanoy City Borough*, 264 Pa. 482, 107 A. 843 (1919) (borough grossly, criminally negligent for failing to guard street properly; in absence of contributory negligence of pedestrian, borough would have been liable to pedestrian for injuries suffered when she fell from borough street into creek).

It is illegitimate to make a distinction between those cases where it is the condition of the property itself that makes the property dangerous, and those cases where it is the *location* of the property that renders that property dangerous. I would hold that, in either situation, the governmental entity owning property set aside for playgrounds has a duty to protect children from the dangerous condition. Obviously, if it were not for the location of a playground

next to a hazard, in all probability, children would not be in proximity to the hazard in the first place.

In both of the within cases, the City put a playground on property which bordered railroad tracks carrying high speed commuter trains. In both cases, the City was alleged to have installed fences to separate the playground from the hazardous railroad tracks. In both cases, holes were created and were allowed to remain in the fences for long periods of time, so that neighboring children established routes between the playgrounds and their residences that went through the holes in the fences and across the railroad tracks. Because the City *does* have a duty to make its playgrounds safe, it was for a jury to decide whether the City was negligent in failing to properly maintain the fences through which the appellants gained access to the playgrounds and whether the facilitation of access to the railroad tracks was a proximate cause of the injuries to appellants.

Appellants argue in the alternative that the City is liable for their injuries in that the City, by erecting fences, acted affirmatively to protect the children using the City playgrounds from the hazard posed by the adjacent railroad tracks, and in so acting failed to properly maintain the fences, thereby increasing the risk of harm to appellants. This theory of liability is set forth at Section 323 of the Restatement (Second) of Torts. The majority herein bolsters its finding that the City owed no duty to the appellants by stating that Section 323 does not create a duty where none exists. Maj. op. at 453–454, citing *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983).

I believe that the majority is misconstruing our opinion in *Morena* wherein we discussed the application of Section 323, the so-called "good Samaritan" section that provides for the imposition of liability on those who act affirmatively to protect another and in so acting fail to exercise reasonable care, which failure increases the risk of harm to the other. In *Morena, supra,* the "good Samaritans" had done

all that they were required to do in transporting the plaintiff to a medical facility for treatment, and others had assumed the responsibility for further assisting the plaintiff. Thus, the "good Samaritans" had ceased acting on behalf of the plaintiff prior to when the harm occurred, and there was no longer any duty that the "good Samaritans" owed to the plaintiff.

In this regard, Dean Prosser states that:

> If there is no duty to come to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse. When we cross the line into the field of 'misfeasance,' liability is far easier to find. A truck driver may be under no obligation whatever to signal to a car behind him that it may safely pass; but if he does signal, he will be liable if he fails to exercise proper care and injury results. There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the danger of a railroad yard; and if he is injured there will be liability. But further, if the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility.

Prosser, Law of Torts (4th ed. 1971) at 343. A municipality is under no obligation to establish playgrounds. Clearly, however, once it does so, it has an obligation to ensure that the playgrounds are not located in a place that presents a hazard to those using the playground. And if the playground is located adjacent to a foreseeable hazard, the municipality is obligated to erect and maintain barriers on the perimeter of the playground to prevent ingress and egress at a location that brings the children into contact with the adjacent hazard. The municipality should not escape liability for an injury occurring due to a breach in the barricade by arguing that it was not responsible for the hazardous condition of the neighboring property. The municipality *was* responsible for luring those using the play-

ground into the vicinity of the hazard. *Accord Ballard v. Polly*, 387 F.Supp. 895 (D.D.C.1975) (school had duty to maintain fence to keep small children using playground off busy street adjacent to playground).

Mr. Justice Flaherty states that Section 323 of the Restatement (Second) of Torts cannot apply to government because "government does not act either gratuitously or for consideration." Maj. op. at 453–454. This is fallacious reasoning. It is clear that Section 323 applies to an undertaking to render services to another, and government does undertake to render services to another. Other courts have not hesitated to hold government responsible for harm caused by its actions pursuant to Section 323. *See, e.g., Rosa v. United States*, 613 F.Supp. 469, 476 (M.D.Pa.1985) (principle of liability set forth in Section 323 "has been held specifically applicable to the United States.")[1] Thus, I would hold that political subdivisions have a duty 1) to erect barriers when locating a playground adjacent to a known hazard, and 2) to exercise reasonable care in maintaining those barriers once erected for the protection of the children who use the playground.

Accordingly, I would reverse the orders of Commonwealth Court entered in the within cases, and I would remand for further proceedings.

---

1. The majority further supports its decision by citing *Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122 (1989), and by stating that it would be "jurisprudentially unsound and in violation of the fundamental principle of *stare decisis* for this Court to unsettle an area of law which we settled only four months ago." Maj. op. at 451. Justices Marshall, Holmes, Cardozo, and Brandeis never allowed such a high-falutin concept to leave litigants unjustly traumatized ... nor should we.